UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

O'REILLY & COLLINS, a Professional Corporation,

Debtor.

_____

TERENCE O'REILLY,

       Appellant,

  v.

BARRY MILGROM, Trustee in Bankruptcy,

       Appellee.

Case No. 14-cv-03361-PJH

Bankr. Ct. No. 12-33016 DM

**ORDER DENYING EMERGENCY MOTION FOR STAY PENDING APPEAL**

       Before the court is the emergency motion for stay pending appeal ("Mot.") filed by appellant Terence O'Reilly ("O'Reilly"). Pursuant to the briefing schedule ordered by the court, opposition briefs were filed by Barry Milgrom, Chapter 7 trustee (the "trustee"), and creditor Michael S. Danko ("Danko"). O'Reilly timely filed a reply, and the matter is submitted on the papers. O'Reilly's motion to stay is DENIED for the reasons set forth below.

## BACKGROUND

       On July 11, 2012, Danko obtained a $4.5 million judgment in state court against debtor O'Reilly & Collins, PC ("debtor") for wrongful termination and breach of contract. Danko and two other creditors filed an involuntary petition under Chapter 7 against debtor on October 25, 2012. Danko subsequently filed a motion in the state court action pursuant to California Code of Civil Procedure Section 187 to amend the judgment to add

O'Reilly as a joint and several judgment debtor, which was granted by the state court. The amended judgment was entered on March 29, 2013. O'Reilly filed an appeal from the amended judgment, which remains pending before the court of appeal. *Danko v. O'Reilly*, No. A138784 (Cal. 1st App. Dist., filed May 24, 2013).

The facts underlying Danko's state court action and judgment against debtor O'Reilly & Collins, PC ("debtor") and O'Reilly are summarized in the court's order affirming the bankruptcy court's order denying Danko's motion for an order that the automatic stay is inapplicable to Danko's judgment and underlying claims against O'Reilly (the "stay order"). *In re O'Reilly v. Collins*, No. C 13-3177 PJH (N.D. Cal. Feb. 3, 2014). Danko has appealed that order to the Ninth Circuit, which has extended the briefing schedule and stayed the appellate proceedings, pending the bankruptcy court's approval of the settlement reached by the trustee and creditors Danko and California Bank & Trust ("CB&T"). Danko's Request for Judicial Notice ("RJN"), Ex. 5 (*In re O'Reilly v. Collins*, No. 14-15407 (9th Cir. March 25, 2014)).

On January 8, 2014, the bankruptcy court conducted a settlement conference with Danko, CB&T, O'Reilly and the trustee, for the purpose of discussing global settlement of the bankruptcy case. Among the claims at issue were (1) Danko's unsecured liquidated claim against debtor for $4,851,176.01, unliquidated and contingent claims for attorney's fees and costs, and contingent recoupment/setoff rights; (2) CB&T's unsecured liquidated claim against debtor for $2,916,772.52 for the balance claimed due on a prepetition loan; and (3) O'Reilly's unsecured claim against debtor for $790,611.36. Danko's claim and CB&T's claim totaled over $7.4 million, which represents over 90% of the total dollar amount of unsecured claims against debtor. An agreement was reached among the trustee, Danko, and CB&T, who filed a stipulation for partial settlement of bankruptcy case issues on March 18, 2014 (Bankr. N.D. Cal. No. 12-33016, doc. no. 172). The terms of that compromise are summarized as follows:

- Danko and CB&T agreed to subordinate distributions from the estate on their claims to all other allowed claims except for O'Reilly's alleged claim

2

and other claims which are subordinated pursuant to section 726(a)(3) of the Bankruptcy Code.

- The trustee agreed (1) to waive fraudulent transfer claims and certain other avoidance claims against O'Reilly, without prejudice to state law claims that Danko and/or CB&T had against O'Reilly or others; (2) to retroactive annulment of the automatic stay with respect to the prosecution and entry of Danko's amended judgment in state court, and (3) to grant relief from stay to Danko and CB&T, so that they can pursue their claims directly against O'Reilly.

Danko's RJN, Ex. 1; Declaration of James S. Monroe in Support of Danko's Opposition to O'Reilly's Motion for Stay Pending Appeal ("Monroe Decl.") ¶ 6.

The trustee filed a motion for order authorizing compromise of controversy with creditors Danko and CB&T, to which O'Reilly filed an opposition. The bankruptcy court granted the trustee's motion for compromise by order entered July 18, 2014 (the "compromise order"). O'Reilly's RJN, Ex. 1. The bankruptcy court denied O'Reilly's oral motion for stay pursuant to Rule 8005. *Id.* ¶ 4. O'Reilly has filed a notice of appeal from the compromise order and the present emergency motion for a stay of pending appeal of the compromise order.

After the court issued the briefing schedule on O'Reilly's emergency motion for stay pending appeal, O'Reilly filed a notice of appeal from the bankruptcy court's order denying O'Reilly's motion for an order declaring Danko's amended judgment to be void. *In re O'Reilly*, No. 14-3502 PJH (N.D. Cal. Aug. 4, 2014). That appeal is not the proper subject of the present motion for stay pending appeal, but in determining whether the bankruptcy court abused its discretion in denying O'Reilly's request for a stay, the court will consider the issues presented in that appeal only to the extent that O'Reilly has identified issues that overlap with the issues to be decided in the appeal from the compromise order.

## STANDARD OF REVIEW

A motion for a stay of the judgment, order, or decree of a bankruptcy judge must ordinarily be presented to the bankruptcy judge in the first instance. Fed. R. Bankr. P. 8005. A motion for relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. *Id.* Where the bankruptcy court has denied a stay under Federal Rule of Bankruptcy Procedure 8005, the appellate court's review is limited to a simple determination of whether the bankruptcy court abused its discretion. *Wymer v. Wymer (In re Wymer)*, 5 B.R. 802 (9th Cir. BAP 1980). The abuse of discretion standard on review of the bankruptcy court's order denying a stay encompasses a de novo review of the law and a clearly erroneous review of the facts with respect to the underlying issues. *Dynamic Finance Corp. v. Ch. 11 Trustee Richard Kipperman (In re North Plaza, LLC)*, 395 B.R. 113, 119 (S.D. Cal. 2008) (citing *Ohanian v. Irwin (In re Ohanian),* 338 B.R. 839, 844, 848 (E.D. Cal. 2006)).

## DISCUSSION

### I.  Legal Standard

Federal Rule of Bankruptcy Procedure 8005 governs the procedure for seeking a stay pending appeal of a bankruptcy court's order to the district court. When deciding whether to issue a discretionary stay pursuant to Rule 8005, courts consider the following four factors: (1) movant's likelihood of success on the merits of the appeal; (2) significant and/or irreparable harm that will come to movant absent a stay; (3) harm to the adverse party if a stay is granted; and (4) where the public interest lies. *In re North Plaza*, 395 B.R. at 119 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *In re Wymer*, 5 B.R. at 806). The first two of these factors "are the most critical." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The movant must show that each factor weighs in favor of granting the stay. *In re Howrey LLP*, 2014 WL

1   3427304, *2 (N.D. Cal. July 14, 2014) (citing, inter alia, *In re North Plaza*, 395 B.R. at
2   119).

## II.   Stay Pending Appeal Is Not Warranted

### A.   Likelihood of Success

With respect to showing likelihood of success in support of a motion for a stay pending appeal, the Ninth Circuit has stated that "[t]here are many ways to articulate the minimum quantum of likely success necessary to justify a stay - be it a 'reasonable probability' or 'fair prospect,' [ ] 'a substantial case on the merits," [ ] or [ ] that 'serious legal questions are raised.'"  *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011) (per curiam) (citations omitted).  These formulations are interchangeable and require, "at a minimum," that there is a "substantial case for relief on the merits," but do not require a showing that "it is more likely than not that [the party seeking stay] will win on the merits." *Lair*, 697 F.3d at 1204 (citing *Leiva-Perez*, 640 F.3d at 966, 968).

To prevail on appeal, O'Reilly must show that the bankruptcy court abused its discretion in approving the compromise agreement among the trustee and the estate's two largest creditors, Danko and CB&T.  The bankruptcy court has great latitude in approving compromise agreements.  *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988). "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  *Martin v. Kane (In re A & C Properties.),* 784 F.2d 1377, 1380-81 (9th Cir. 1986). Before approving a settlement agreement, the bankruptcy court is charged with considering the "fairness, reasonableness, and adequacy" of the agreement.  *Id.* at 1381. The bankruptcy court must consider a number of factors in making this determination:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

5

1    *Id.* (quoting *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135 (8th Cir. 1984)).

2    O'Reilly does not address the factors under *A & C Properties* that must be considered by the bankruptcy court in determining whether a compromise agreement is fair, reasonable and adequate.  Rather, he contends that the bankruptcy court erred in approving the compromise agreement on the following grounds: (1) it purported to revive the void state court judgment by approving retroactive termination of the automatic stay; (2) it lacked jurisdiction to modify the automatic stay because the court's order affirming the bankruptcy court's stay order is presently on appeal to the Ninth Circuit; and (3) it had no evidence before it to justify retroactive relief from the automatic stay.

### 1. Bankruptcy Court May Grant Relief from Effect of Automatic Stay As To Amended Judgment

O'Reilly contends that Danko obtained the amended judgment in state court in March 2013 in violation of the automatic stay, which became effective on October 25, 2012 upon the filing of the involuntary petition by Danko and other creditors.  Thus, O'Reilly argues, the amended judgment holding him jointly and severally liable for the judgment against debtor is void.

O'Reilly also contends that Danko's amended judgment is void in light of this court's affirmance of the bankruptcy court's order that the automatic stay barred any attempt by Danko to enforce the amended judgment.  As O'Reilly concedes, this court did not make a determination that the amended judgment obtained in state court was void.  Mot. for Stay at 3 n.2.  O'Reilly argues, however, that because the amended judgment was obtained in violation of the automatic stay, it is void and cannot not be cured or waived by the trustee.

#### a. O'Reilly's Lack of Standing to Enforce Automatic Stay With Respect to Amended Judgment

The trustee takes the position that the automatic stay is intended solely to benefit the estate, and if the trustee does not seek to enforce the protections of the automatic stay, then no other party may challenge acts that are alleged to be in violation of the stay.

6

1   Trustee's Opp. at 6-7 (citing *In re Pecan Groves of Arizona*, 951 F.2d 242, 245 (9th Cir.
2   1991) (if Chapter 7 trustee does not appeal an adverse decision regarding an alleged
3   violation of the automatic stay, a creditor has no independent standing to appeal)).
4   Danko argues that O'Reilly, as a creditor in a Chapter 7 case, lacks standing to challenge
5   alleged violations of the automatic stay, and therefore lacks standing to challenge the
6   trustee's stipulation to grant Danko relief from stay. Danko Opp. at 7 (citing *In re Pecan
7   Groves*, 951 F.2d at 245; *ComUnity Collectors LLC v. MERS, Inc.*, 2012 WL 3249509
8   (N.D. Cal. Aug. 7, 2012)).

9         O'Reilly responds that he is a creditor of the bankruptcy estate and thereby has
10  standing to enforce the automatic stay. He cites an out-of-district bankruptcy court
11  opinion recognizing that "the automatic stay is intended to benefit creditors, as well as
12  debtors," and determining that the holding of *Pecan Groves,* that intervening creditors do
13  not have independent standing to appeal an adverse ruling on an alleged stay violation if
14  the trustee opts not to appeal, did not apply in the Chapter 11 context. *In re Int'l Forex of
15  California, Inc.,* 247 B.R. 284, 290 (Bankr. S.D. Cal. 2000) ("*In re Pecan Groves*' holding
16  has been overstated for the proposition that the automatic stay is solely for the benefit of
17  the debtor, and a creditor cannot have standing under [former] § 362(h)."). The
18  bankruptcy court in *Forex* distinguished the Chapter 11 proceedings there from the
19  Chapter 7 proceeding in *Pecan Groves. Id.* ("it was a chapter 7 case where § 1109(b)
20  was not applicable"). The bankruptcy court in *Forex* found that the Chapter 11 debtor's
21  principal willfully violated the stay "and thus would not likely cause the estate to
22  commence this motion [of creditors to recover damages for stay violation] against
23  himself." *Id.* Allowing the Chapter 11 creditors to challenge the alleged violation of the
24  automatic stay, the bankruptcy court there held that the creditors had both "constitutional
25  standing" and "statutory standing" to seek damages. *In re Int'l Forex*, 247 B.R. at 289
26  (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)
27  ("The stay protects the debtor by allowing it breathing space and also protects creditors

7

as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others.")).

O'Reilly fails to distinguish *Pecan Groves,* which controls the Chapter 7 proceedings here. Rather, O'Reilly claims to have statutory standing under *Forex* to assert a violation of the automatic stay by arguing that he is within the zone of interests sought to be protected by the statutory scheme because he is a creditor of the estate. Mot. Stay Pending Appeal at 6 (citing *In re Int'l Forex*, 247 B.R. at 290). By its own reasoning, the bankruptcy court's holding in *Forex* applies only to Chapter 11 cases. Even if *Forex* were applicable to these Chapter 7 proceedings, the cases cited by O'Reilly do not support his proposition that he, as a judgment debtor who is not in bankruptcy and who also happens to be a creditor of the estate, may claim that another party's judgment against him is void because it violates the automatic stay.

In *Forex*, the creditors of the estate sued the corporate debtor's CEO, who filed a third party complaint for indemnification against the corporate debtor in willful and intentional violation of the automatic stay. *In re Int'l Forex*, 247 B.R. at 292. The bankruptcy court there determined that the creditors had standing to pursue fees and costs against the corporate debtor's officer and his attorney for stay violations under § 362(h), because if the CEO had succeeded in liquidating his indemnification claims against the debtor in state court, the CEO would have obtained an advantage over the creditors of the estate with unliquidated claims. *Id.* at 291-92. However, the bankruptcy court denied the creditors' request for compensatory damages that arose from their lawsuit against the individual corporate officer, because "[t]o the extent the Creditors are seeking damages for their inability to prosecute their individual claims against [debtor's CEO], they are pursuing those damages as owners of the claim against [debtor's CEO] and not as creditors of this estate." *Id.* at 292. The bankruptcy court reasoned that "enforcing § 362 to benefit solely individual creditors (not common to all creditors of the estate) would be outside of § 362's scope." *Id.* (citation omitted). *See In re Franck*, 19 F.3d 1440 (9th Cir. 1994) ("the fact that individual creditors might incidentally benefit from

8

the automatic stay or be injured in some way by its violation does not give those creditors standing under the Bankruptcy Code to bring an action claiming the stay was violated").

Here, like the claims asserted by the creditors against the individual corporate officer in *Forex*, O'Reilly alleges violation of the automatic stay to benefit himself in the role of an "outside party," rather than as a creditor. *In re Int'l Forex*, 247 B.R. at 292 ("These damages do not arise as a result of the Creditors' claims against *this* estate, but rather arise as a result of their claims against [the corporate debtor's CEO]."). Although O'Reilly is a creditor of the estate, O'Reilly fails to show that he seeks application of the automatic stay against Danko's amended judgment in his role as a creditor of the estate, or for the purpose of protecting assets of the estate for distribution to creditors. Rather, O'Reilly seeks to void the amended judgment for his own benefit to bar Danko from pursuing the state court amended judgment against O'Reilly personally. Based on the court's familiarity with the facts and allegations underlying Danko's amended judgment, which was at issue in Danko's earlier appeal (*In re O'Reilly & Collins*, case no. 13-3177 PJH), the court determines that O'Reilly invokes the protection of the automatic stay here not in his role as a creditor of the bankruptcy estate, but as a judgment debtor of Danko. Thus, O'Reilly has failed to show a reasonable probability of success on his argument that he has statutory standing to challenge the alleged violation of the automatic stay.

    **b. Bankruptcy Court's Authority to Grant Retroactive Relief from Stay**

To address O'Reilly's argument that a judgment obtained in violation of the automatic stay is void and cannot be revived, Danko responds that section 362(d), a subsection of the automatic stay provision, gives the bankruptcy court the power to grant creditors relief from the stay. *See Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992) ("section 362(d) gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay."). O'Reilly cites *In re Schwartz* as authority that acts in violation of the stay are void, not merely voidable, in support of his argument that the bankruptcy court could not

9

"revive" a void judgment obtained in violation of the automatic stay. *Id.* at 571. However, the court in *In re Schwartz* reasoned that the bankruptcy court's authority under § 362(d) to make exceptions to the general operation of the stay "is not inconsistent with the conclusion that any action in violation of the automatic stay is void and of no effect." *Id.* at 572-73. The Ninth Circuit held that "if a creditor obtains retroactive relief from stay under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue." *Id.* at 573. Thus, O'Reilly is not likely to prevail on his argument that the bankruptcy court abused its discretion by approving the compromise agreement, thereby allowing Danko to enforce the amended judgment against O'Reilly personally.

### 2. Bankruptcy Court's Jurisdiction Pending Appeal of the Stay Order

O'Reilly contends that the bankruptcy court lacked jurisdiction over the issue whether enforcement of Danko's amended judgment remained subject to the automatic stay because Danko's appeal of the stay order to the Ninth Circuit divested the bankruptcy court of jurisdiction. "'The filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *Trulis v. Barton*, 107 F.3d 685, 694-95 (9th Cir. 1995) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). As a general matter, "[a] pending appeal divests a bankruptcy court of jurisdiction to vacate or modify an order which is on appeal." *In re Marino*, 234 B.R. 767, 769 (9th Cir. BAP 1999). However, O'Reilly fails to address the fact that the parties to the Ninth Circuit appeal agreed that the compromise would settle the case on appeal. *See Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988) ("The Ninth Circuit is firmly 'committed to the rule that the law favors and encourages compromise settlements.'") (quoting *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977)).

10

1    Here, the parties to the appeal from the stay order, Danko and the trustee,
2 expressly sought from the court of appeals an extension of the filing deadlines "to allow
3 Appellee, Barry Milgrom, Trustee, to seek Bankruptcy Court approval of the Settlement
4 reached by and among the Trustee, California Bank & Trust and Michael Danko."
5 Danko's RJN, Ex. 4. Danko and the trustee informed the Ninth Circuit that the settlement
6 "will make this appeal moot." *Id.* The Ninth Circuit construed the stipulated request for
7 extension of time "as a motion to stay the appellate proceedings pending settlement of
8 this appeal," and stayed the appeal. *Id.*, Ex. 5. Because the Ninth Circuit expressly
9 stayed the appeal pending the bankruptcy court's approval of the compromise, O'Reilly
10 has not demonstrated likelihood of success on his argument that the bankruptcy court
11 lacked jurisdiction to approve the settlement.
12    In further support of his contention that the bankruptcy court lacked jurisdiction to
13 approve the settlement and grant relief from the automatic stay, O'Reilly reiterates his
14 argument that the amended judgment is "irretrievably void" because the bankruptcy court
15 determined, and this court affirmed on appeal, that the automatic stay applied to Danko's
16 claims and amended judgment against O'Reilly. O'Reilly argues that the logical result of
17 that determination is that the amended judgment is void, not merely voidable. Reply at 4.
18 As O'Reilly concedes elsewhere, however, the court expressly declined to consider the
19 issue whether the amended judgment violated the automatic stay. Mot. at 3 n. 2. *See*
20 O'Reilly's RJN, Ex. 3 at 19 (Order on Bankruptcy Appeal, *In re O'Reilly & Collins*, No. 13-
21 3177 PJH) ("Because the issue presented on appeal concerns Danko's enforcement
22 efforts, and the parties do not appear to dispute whether the state court proceedings on
23 the motion to amend judgment violated the automatic stay, the court need not address
24 the applicability of the automatic stay on those post-petition proceedings."). Moreover,
25 O'Reilly fails to address the bankruptcy court's statutory authority, discussed above, to
26 craft relief from the automatic stay, as recognized in *In re Schwarz,* 954 F.2d at 573 ("if a
27 creditor obtains retroactive relief from stay under section 362(d), there is no violation of
28 the automatic stay, and whether violations of the stay are void or voidable is not at

11

1   issue"). O'Reilly fails to show that the bankruptcy court lacked jurisdiction to approve the
2   compromise.
3        Because the record demonstrates that the Ninth Circuit expressly stayed Danko's
4   appeal pending the bankruptcy court's approval of the settlement, it is not necessary to
5   reach the question, raised by Danko, whether the bankruptcy court retained jurisdiction to
6   approve the compromise on the ground that the settlement involved an issue distinct from
7   the issue on appeal. Danko Opp. at 7-8 (citing *Trulis*, 107 F.3d at 695).

### 3. Evidence to Support Retroactive Relief from Stay

9        O'Reilly argues that there is no evidence in the record to justify retroactive relief
10  from the automatic stay in favor of Danko. O'Reilly contends that the standard for
11  granting retroactive relief has not been satisfied, citing authority for retroactive annulment
12  of the automatic stay for cause pursuant to § 362(d)(1). Mot. Stay Pending Appeal at 10-
13  11 (citing *In re Fjeldsted*, 293 B.R. 12, 15 (9th Cir. BAP 2003) ("a determination of
14  whether or not to annul the automatic stay and thereby grant retroactive relief requires
15  the court to balance the equities")). In particular, O'Reilly contends that the equities do
16  not support a finding of retroactive annulment. *Id.*
17       Both Danko and the trustee respond that the balance of the equities test under
18  *Fjeldsted* for retroactive annulment of the stay does not apply to a bankruptcy court's
19  approval of a compromise. Trustee Opp. at 6; Danko Opp. at 6. Rather, they argue, a
20  motion to approve a compromise is governed strictly by the standards set forth in *A & C*
21  *Properties*, 784 F.2d at 1380. There, the Ninth Circuit stated that "a trustee may, with the
22  approval of the court, compromise any controversy arising in the administration of the
23  estate upon such terms as he may deem for the best interest of the estate." *Id.* (citations
24  and internal quotation marks omitted). The court of appeals articulated the strong policy
25  favoring compromise in bankruptcy proceedings:

> The purpose of a compromise agreement is to allow the trustee and
> the creditors to avoid the expenses and burdens associated with
> litigating sharply contested and dubious claims. The law favors
> compromise and not litigation for its own sake, and as long as the
> bankruptcy court amply considered the various factors that

>determined the reasonableness of the compromise, the court's decision must be affirmed.

*In re A & C Properties*, 784 F.2d at 1380-81 (citations omitted).

None of the parties cites authority on the question whether the standard set forth in *A & C Properties* governs compromise agreements that grant retroactive stay relief, or whether the balance of equities test for retroactive annulment of the automatic stay under *Fjeldsted* must also be satisfied. O'Reilly argues that "if the critical component of the compromise requires retroactive stay relief, it is unassailable that the standards for such relief must be met." Reply at 2. Neither Danko nor the trustee cite authority to the contrary, and they fail to address the *Fjeldsted* factors for retroactive stay relief in their oppositions to the motion for stay pending appeal, except to the extent that they overlap with the factors under *A & C Properties*. In the absence of authority disavowing the *Fjeldsted* test for granting retroactive stay relief upon approval of a compromise, the court weighs O'Reilly's likelihood of success on his contention that the balance of the equities does not favor retroactive annulment of the stay.

Section 362(d) requires a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). In determining whether there is cause to grant retroactive relief, courts consider the following factors:

>1. Number of filings;
>
>2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
>
>3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
>
>4. The debtor's overall good faith;
>
>5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
>
>6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

13

|   |   |
|---|---|
| 1 | 7. The relative ease of restoring parties to the status quo ante; |
| 2 | 8. The costs of annulment to debtors and creditors; |
| 3 | 9. How quickly creditors moved for annulment, or how quickly |
| 4 | debtors moved to set aside the sale or violative conduct; |
| 5 | 10. Whether, after learning of the bankruptcy, creditors proceeded |
| 6 | to take steps in continued violation of the stay, or whether they |
| 7 | moved expeditiously to gain relief; |
| 8 | 11. Whether annulment of the stay will cause irreparable injury to |
| 9 | the debtor; |
| 10 | 12. Whether stay relief will promote judicial economy or other |
| 11 | efficiencies. |

*In re Fjeldsted*, 293 B.R. at 25. A court should not mechanically apply these factors, but should use them as an aid in weighing the equities. *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997). "In any given case, one factor may so outweigh the others as to be dispositive." *In re Fjeldsted*, 293 B.R. at 25.

O'Reilly focuses on one of the two primary factors under *Fjeldsted*: "whether the creditor was aware of the bankruptcy petition." 293 B.R. at 24. It is undisputed that Danko was aware of the bankruptcy, having filed the involuntary petition, and that he did not seek relief from the automatic stay before seeking an amended judgment in state court. O'Reilly contends that "the equities cannot fall in Mr. Danko's favor" based on this factor alone. Reply at 3. O'Reilly does not address the other primary factor under *Fjeldsted*, i.e., whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor, and there is no indication in the present record whether this factor weighs either in favor of or against a stay. *See id.* (citing *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055). Nevertheless, Ninth Circuit authority has "never held these two factors to be dispositive; instead, we have engaged in a case by case analysis." *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055.

14

O'Reilly fails to address other *Fjeldsted* factors weighing in favor of retroactive stay relief that are supported by the record. In particular, the trustee noted that by agreeing to retroactive stay relief for Danko's state court lawsuit, including enforcement of the amended judgment against O'Reilly, the compromise agreement would resolve Danko's appeal of the stay order to the Ninth Circuit, which would promote judicial economy and weigh in favor of granting retroactive stay relief. Trustee's Opp. at 7. In his motion to compromise before the bankruptcy court, the trustee explained that from his perspective, "'success' in this case is avoiding litigation and leaving the estate's two largest creditors to pursue Mr. O'Reilly, who would be the principal source of funds for the payment of their very substantial claims in any event." Danko's RJN, Ex. 2 at 9 (Mot. to Compromise, filed April 8, 2014). The trustee noted that Danko's appeal to the Ninth Circuit "was based upon the entry of the Stay Order, which stopped Mr. Danko from taking any collection action against Mr. O'Reilly, even though Mr. O'Reilly is not a debtor under the Bankruptcy Code." *Id.* By rendering moot Danko's appeal of the stay order, the compromise "would eliminate any further involvement of the estate before the Ninth Circuit." *Id*. Thus, with respect to the irreparable injury factor under *Fjeldsted,* retroactive relief from the stay concerning Danko's amended judgment and enforcement action against O'Reilly would not cause irreparable injury to debtor.

Danko's attorney also addressed the efficiency gained by the compromise and retroactive annulment of the stay:

> This compromise benefits the estate and its creditors because otherwise the Trustee would have to expend substantial estate assets to pursue various avoidance actions against O'Reilly and others while Danko and CB&T were relegated to the sidelines. However, essentially all of the proceeds realized by the Trustee from these efforts would be distributed to Danko and CB&T. Therefore the effect of this compromise is to extricate the bankruptcy estate from protracted and expensive avoidance litigation which would ultimately be for the primary benefit of Danko and the Trustee, while protecting the rights of the other unsecured and unsubordinated creditors.

Monroe Decl. ¶ 6.

15

On the present record, and in the context of the trustee's compromise with the two principal creditors of the estate, O'Reilly has not shown that the balance of equities weighs against retroactive annulment of the stay. Danko's knowledge of the bankruptcy petition, and his failure to seek relief from the stay expeditiously before seeking an amended judgment in state court, do not outweigh the judicial economy and efficiencies gained by the approval of the compromise and retroactive relief from stay as to Danko's amended judgment, in the absence of irreparable injury to debtor. Although O'Reilly argues that retroactive relief from the stay would prejudice him as a judgment debtor of Danko, that injury is not properly considered under the factors set forth in *Fjeldsted*. Under the balance of equities test, O'Reilly has not demonstrated a likelihood of success on his argument that the evidence does not support retroactive annulment of the stay.

### 4. Argument Raised in Reply

In his reply brief, O'Reilly raises a fourth ground for challenging the bankruptcy court's approval of the compromise agreement, namely, that it is "nonsensical" for the trustee to waive the estate's avoidance and fraudulent transfer actions against O'Reilly, yet reserve Danko's right to prosecute the same avoidance actions. Reply at 4. O'Reilly fails to cite authority for the proposition that the estate may not waive its claims without prejudice to a creditor's right to bring those claims on his own behalf. Having failed to raise this ground in his moving brief, O'Reilly has waived this argument for purposes of the present motion for stay.

### B. Irreparable Harm

O'Reilly contends that he will suffer immediate and irreparable harm if the stay pending appeal is not granted. He states that the face amount of Danko's amended judgment is over $4.3 million. O'Reilly argues that without a stay, Danko will immediately begin collection efforts against O'Reilly, which will have the immediate and certain result of catapulting O'Reilly into financial chaos. Mot. at 11.

O'Reilly fails to demonstrate immediate threatened injury in the absence of a stay pending appeal. O'Reilly offers only speculative argument about financial chaos, rather

than irreparable harm. As the record reflects, O'Reilly's appeal from the amended judgment remains pending before the state court of appeal, and if he prevails there, he will not be subject to collection efforts by Danko. Furthermore, he asserts only monetary injury, which "is not normally considered irreparable" under well-established law. *Los Angeles Mem. Coliseum Comm. v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). In the event that O'Reilly suffered monetary loss from Danko's collection efforts, his loss would be fully compensable by monetary relief if O'Reilly ultimately prevails in the present appeal from the bankruptcy court's order authorizing the compromise. *Id.*

Having determined that the two most critical factors, likelihood of success and irreparable harm, do not weigh in favor of a stay pending appeal, the court proceeds to consider the remaining stay factors.

### C. Harm If Stay Is Granted

O'Reilly contends that the prospective harm to the trustee and Danko is minimal, in that it would only result in delay in closing the bankruptcy case, which was initiated by Danko in the first place. Mot. at 12. The trustee responds that the statute of limitations under § 546(a) is running on the estate's claims against O'Reilly and CB&T, and that the estate would incur legal fees in pursuing its claims before the limitations period expires, without financial recourse to the estate, if the order authorizing the compromise is stayed pending appeal. Trustee's Opp. at 8. Danko adds that a stay of the order authorizing compromise would return the litigation posture in bankruptcy court to the pre-compromise status quo, so that the trustee would be forced to pursue the avoidance claims against O'Reilly and expend estate assets that would otherwise be disbursed to creditors. Danko and the trustee have sufficiently demonstrated that the estate, as well as creditors, would suffer substantial harm as a result of a stay pending appeal of the bankruptcy court's order. *See Lynch v. California Pub. Utilities Comm.*, 2004 WL 793530, *2 (N.D. Cal. Apr. 9, 2004).

17

**D.     Public Interest**

O'Reilly contends that the public interest is served by preserving the "sanctity of the automatic stay" over public policy favoring settlement of litigation. Mot. at 12. O'Reilly contends that Danko has "gamed" the bankruptcy system and convinced the trustee to grant him relief from the automatic stay, despite his disregard of the automatic stay in obtaining the amended judgment from the state court. O'Reilly points out that the provision of the compromise giving Danko relief from the stay conflicts with the trustee's earlier litigation position that Danko's state court proceedings were subject to the automatic stay. Mot. at 13.

The trustee responds that the automatic stay was intended to protect a debtor from its creditors and to ensure equitable payment of claims for the creditors. Now that the trustee has reached a settlement on behalf of the estate with its two largest creditors, the trustee argues that the automatic stay should not be invoked to benefit O'Reilly, who is not a debtor in bankruptcy. The trustee notes that O'Reilly has personally benefited from the trustee's prior efforts to apply the automatic stay to Danko's state court action. The trustee argues forcefully that "[t]he automatic stay should not be interpreted in a manner that provides an alleged individual creditor with the benefit of the automatic stay, where the Trustee does not seek to enforce the automatic stay for the benefit of the bankruptcy estate and all creditors." Trustee's Opp. at 9. Danko also points out that a stay of the order approving the compromise will burden the bankruptcy court and the estate with unnecessary avoidance litigation. Danko's Opp. at 10.

O'Reilly fails to demonstrate that a stay pending appeal will not do harm to the public interest.

**CONCLUSION**

O'Reilly has failed to show that a stay is warranted pursuant to Bankruptcy Rule 8005 and has not demonstrated that the bankruptcy court abused its discretion by denying his motion for a stay pending appeal. Therefore, O'Reilly's motion for a stay

18

pending appeal of the bankruptcy court's order granting the trustee's motion for order authorizing compromise of controversy is DENIED.

**IT IS SO ORDERED.**

Dated: August 14, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge