1

2

3

4            UNITED STATES DISTRICT COURT

5           NORTHERN DISTRICT OF CALIFORNIA

6

7   In re:

8   O'REILLY & COLLINS, a Professional          Case No.  14-cv-03361-PJH
    Corporation,
9                                                Bankr. Ct. No. 12-33016 DM
               Debtor.
10                                               **ORDER AFFIRMING ORDERS OF
                                                 THE BANKRUPTCY COURT**

11

12

13        Before the court is the appeal of Terence O'Reilly ("O'Reilly") from the orders

14   entered by the bankruptcy court on July 18, 2014, granting the trustee's motion for order

15   authorizing compromise of controversy and denying O'Reilly's motion for an order

16   declaring Michael S. Danko's ("Danko") amended judgment to be void.  The matter is fully

17   briefed and suitable for decision without oral argument.  Having carefully considered the

18   relevant authority, the parties' papers and the record, the court AFFIRMS the orders of

19   the bankruptcy court.

20                              **BACKGROUND**

21        The following summary of background facts is primarily restated from the order,

22   doc. no. 18,  denying O'Reilly's emergency motion for stay pending appeal from the July

23   18, 2014 order of bankruptcy court granting the trustee's motion for compromise (the

24   "compromise order"), and the order entered in a related bankruptcy appeal, affirming the

25   bankruptcy court's order denying Danko's motion for an order that the automatic stay is

26   inapplicable to Danko's section 187 amended judgment and underlying claims against

27   O'Reilly.  *In re O'Reilly & Collins*, No. C 13-3177 PJH (N.D. Cal. Feb. 3, 2014), *appeal

28   dismissed*, *In re O'Reilly & Collins*, No. 14-15407 (9th Cir. Nov. 14, 2014).

*United States District Court*
*Northern District of California*

### A.    Danko's State Court Action

Danko, an attorney, worked with O'Reilly for over 13 years and became a minority shareholder in the law firm, once named O'Reilly & Danko and now named O'Reilly & Collins ("debtor"), until 2009 when his employment was terminated.  Danko filed a lawsuit in December 2009 in the San Francisco County Superior Court, titled *Michael Danko v. Terry O'Reilly, an individual; O'Reilly & Collins, a Professional Corporation, et al.*, Case No. CGC-09-495203 (the "state court action").  After a jury trial, the jury found that debtor O'Reilly & Collins breached its contract with Danko and wrongfully terminated him in 2009 in order to avoid paying Danko $2.4 million in compensation due to him. Thereafter, on July 11, 2012, a judgment was entered in the superior court in favor of Danko and against debtor as follows: for $2,418,744.00 in damages and expense reimbursement; for prejudgment interest in the sum of $789,893.08; for waiting time penalties pursuant to Labor Code section 203 in the amount of $41,538.46; total of $3,250,175.54; plus attorney's fees and costs as subsequently to be determined by the court.  On July 13, 2012, Danko caused a notice of judgment lien, naming debtor as the judgment debtor, to be filed with the secretary of state with respect to the judgment.

On October 18, 2012, the superior court entered an award of attorney's fees in the amount of $1,230,609.50 and costs in the amount of $53,134.76 in favor of Danko and against debtor.  The superior court also held O'Reilly jointly and severally liable for $107,397.50 of the fees awarded to Danko due to discovery misconduct.  Oct. 18, 2012 Order Regarding Motions for Attorneys Fees and Costs at 7.  On October 26, 2012, Danko caused an amended notice of judgment lien to be filed, increasing the amount required to satisfy the judgment to include the award of fees and costs.

On or about November 13, 2012, Danko filed a motion to amend the judgment to add Terry O'Reilly as a judgment debtor for all of the amounts owed Danko on alter ego grounds and in the interest of justice pursuant to California Code of Civil Procedure § 187.  O'Reilly Excerpts of Record ("ER") at 236-54.

2

United States District Court
Northern District of California

On March 25, 2013, the superior court issued its Statement of Decision Granting Plaintiff's Motion to Amend the Judgment to add O'Reilly as a judgment debtor on the judgment.  The superior court found "that Danko has met his burden of establishing alter ego, and that there are no meritorious defenses to the motion."  March 25, 2013 slip op. at 2.  On March 29, 2013, the superior court entered the amended judgment in favor of Danko and against debtor and O'Reilly, jointly and severally, as follows: $2,418,744.00 in damages and expense reimbursement; for prejudgment interest in the sum of $789,893.08; for waiting time penalties pursuant to Labor Code section 203 in the amount of $41,538.46; for attorney's fees in the amount of $1,230,609.50; and for costs in the amount of $53,134.76; total of $4,533,919.80.  Trustee Excerpts of Record ("TE") 49-57.  The amended judgment further provided that judgment was entered in favor of O'Reilly and against Danko on the causes of action for breach of oral contract, non-payment of wages, waiting time penalties, wrongful termination, breach of the implied covenant of good faith and fair dealing, and quantum meruit: "Terry O'Reilly is awarded attorney's fees in the amount of $72,285.00 and costs in the amount of $1,383.00 against Michael Danko."  TE 57.  On May 24, 2013, O'Reilly filed a notice of appeal from the amended judgment, which was affirmed by the court of appeal on November 25, 2014. *Danko v. O'Reilly*, No. A138784 (Cal. Ct. App., 1st Dist. Nov. 25, 2014).

**B.     Bankruptcy Proceedings**

On October 8, 2012, debtor O'Reilly & Collins executed a general assignment for the benefit of creditors, pursuant to California law, to Credit Management Association ("CMA").  An involuntary bankruptcy petition under Chapter 7 was filed against debtor on October 25, 2012, by Danko and two other petitioning creditors, RNS Healthcare Consultants, Inc. and Shirin Razavian.  On November 15, 2012, interested party CMA filed a motion to dismiss the involuntary petition, in which debtor O'Reilly & Collins and creditor California Bank & Trust ("CB&T" or "the bank") joined.  On February 5, 2013, about two months after the state court held a hearing on Danko's motion to amend the judgment, the bankruptcy court entered the order for relief under Chapter 7 against

3

United States District Court
Northern District of California

1  debtor and, by separate order, denied the motion to dismiss.  Trustee Barry Milgrom was

2  appointed as Chapter 7 trustee to administer debtor's financial affairs.

3          On or about April 1, 2013, the trustee caused to be served and filed, in connection

4  with the state court action, a Notice of Bankruptcy Filing, Appointment of Chapter 7

5  Trustee on Behalf of O'Reilly & Collins and of Automatic Stay Pursuant to 11 U.S.C. §

6  362(a).  ER 276-78.  The trustee's notice stated, "Based on the applicability of the

7  automatic stay, any attempts to obtain a judgment or enforce a judgment against

8  Defendant Terry O'Reilly for claims based upon fraudulent conveyances and/or alter ego,

9  are property of the bankruptcy estate and subject to the stay imposed under 11 U.S.C. §

10  362(a)(3)."

11          On April 12, 2013, Danko filed a motion for an order that the automatic stay is

12  inapplicable to Danko's judgment and his underlying claims against O'Reilly.  The motion

13  was opposed by the bank and by the trustee, with O'Reilly joining in the trustee's

14  opposition.  Following a hearing on the motion, the bankruptcy court denied Danko's

15  motion and held that the stay applies to prosecution by Danko against O'Reilly.  Danko

16  appealed from the bankruptcy court's May 16, 2013, order denying his motion, which this

17  court affirmed.  *In re O'Reilly & Collins,* No. C 13-3177 PJH (N.D. Cal. Feb. 3, 2014).

18  Danko filed an appeal to the 9th Circuit, and the parties stipulated to dismissal of Danko's

19  appeal, without prejudice to reinstate Danko's appeal if either the district court or the

20  circuit court does not affirm the bankruptcy court's order approving the settlement of the

21  bankruptcy case.  *In re O'Reilly & Collins*, No. 14-15407 (9th Cir. Nov. 14, 2014).

22          **C.      Settlement of Bankruptcy Case**

23          On January 8, 2014, the bankruptcy court conducted a settlement conference with

24  Danko, CB&T, O'Reilly and the trustee, for the purpose of discussing global settlement of

25  the bankruptcy case.  Among the claims at issue were (1) Danko's unsecured liquidated

26  claim against debtor for $4,851,176.01, unliquidated and contingent claims for attorney's

27  fees and costs, and contingent recoupment/setoff rights; (2) CB&T's unsecured liquidated

28  claim against debtor for $2,916,772.52 for the balance claimed due on a prepetition loan;

United States District Court
Northern District of California

and (3) O'Reilly's unsecured claim against debtor for $790,611.36.  Danko's claim and CB&T's claim totaled over $7.4 million, which represents over 90% of the total dollar amount of unsecured claims against debtor.  An agreement was reached among the trustee, Danko, and CB&T, who filed a stipulation for partial settlement of bankruptcy case issues on March 18, 2014.  *In re O'Reilly & Collins*, No. 12-33016 (Bankr. N.D. Cal. doc. no. 172).  The terms of that compromise are summarized as follows:

- Danko and CB&T agreed to subordinate distributions from the estate on their claims to all other allowed claims except for O'Reilly's alleged claim and other claims which are subordinated pursuant to section 726(a)(3) of the Bankruptcy Code.

- The trustee agreed (1) to waive fraudulent transfer claims and certain other avoidance claims against O'Reilly, without prejudice to state law claims that Danko and/or CB&T had against O'Reilly or others; (2) to retroactive annulment of the automatic stay with respect to the prosecution and entry of Danko's amended judgment in state court, and (3) to grant relief from stay to Danko and CB&T, so that they can pursue their claims directly against O'Reilly.

ER 142-50.

The trustee filed a motion for order authorizing compromise of controversy with creditors Danko and CB&T, to which O'Reilly filed an opposition.  O'Reilly separately filed a motion for an order declaring Danko's amended judgment to be void.  After conducting a hearing on the motions, the bankruptcy court granted the trustee's motion for compromise by order entered July 18, 2014 (the "compromise order").  ER at 135-139. By separate order entered on July 18, 2014, the bankruptcy court denied O'Reilly's motion for an order declaring Danko's amended judgment to be void (the "void judgment order").  ER 140-141 ("Order Denying Creditor Terry O'Reilly's Motion For An Order Declaring Danko's Amended Judgment To Be Void").

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.    Appeal**

On July 24, 2014, O'Reilly filed a notice of appeal from the compromise order and filed an emergency motion for stay pending appeal.  By order entered August 14, 2014, the court denied the motion for stay pending appeal.  Doc. no. 18.  O'Reilly's appeal from the order denying stay was dismissed by the Ninth Circuit for lack of jurisdiction.  *In re O'Reilly & Collins*, No. 14-16570 (9th Cir. Nov. 17, 2014).

On August 4, 2014, O'Reilly filed a separate notice of appeal from the void judgment order, No. C14-3502 PJH.  Pursuant to the stipulation of O'Reilly and appellees, Danko and the trustee, the court ordered the consolidation of O'Reilly's appeal from the bankruptcy court's compromise order, No. C14-3361 PJH, and his appeal from the void judgment order, No. C14-3502 PJH.  Doc. no. 22.

The court grants Danko's request for judicial notice of the now-published decision by the court of appeal in *Danko v. O'Reilly*, 232 Cal. App. 4th 732 (Nov. 25, 2014), affirming the superior court's entry of the amended judgment on March 29, 2013, in favor of Danko and against O'Reilly.  Doc. no. 37.

**ISSUES PRESENTED**

O'Reilly presents the following issues on appeal:

(1)    whether O'Reilly has standing to enforce the automatic stay with respect to Danko's section 187 judgment;

(2)    whether the bankruptcy court erred in approving the compromise order without determining whether Danko was entitled to retroactive stay relief;

(3)    whether retroactive relief from stay improperly conferred substantive causes of action on Danko.

**STANDARD OF REVIEW**

The court reviews the bankruptcy court's conclusions of law de novo, and its findings of fact for clear error.  *In re Eashai,* 87 F.3d 1082, 1086 (9th Cir. 1996).  A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left

United States District Court
Northern District of California

1   with the definite and firm conviction that a mistake has been committed." *Anderson v.*

2   *City of Bessemer*, 470 U.S. 564, 573 (1985).

3       Approval of a compromise agreement is reviewed for abuse of discretion.  *In re*

4   *Woodson*, 839 F.2d 610, 620 (9th Cir. 1988).  Under the abuse of discretion standard of

5   review, the court must first "determine de novo whether the [bankruptcy] court identified

6   the correct legal rule to apply to the relief requested."  *United States v. Hinkson*, 585 F.3d

7   1247, 1262 (9th Cir. 2009) (en banc).  If the bankruptcy court identified the correct legal

8   rule, the court then determines under the clearly erroneous standard whether its factual

9   findings and its application of the facts to the relevant law were: "(1) illogical, (2)

10  implausible, or (3) without support in inferences that may be drawn from the facts in the

11  record."  *Id.* (internal quotation marks omitted).

**DISCUSSION**

12

13  I.  **Standing to Challenge Violation of the Automatic Stay**

14       O'Reilly asserts in his appeal that Danko initiated the debtor's bankruptcy case by

15  filing an involuntary petition and then violated the stay by obtaining the section 187

16  judgment against O'Reilly.[1]  In Danko's related bankruptcy appeal, the court affirmed the

17  bankruptcy court's ruling that Danko's alter ego claims against O'Reilly, which were

18  based on allegations that O'Reilly fraudulently transferred debtor's assets, were property

19  of the bankruptcy estate and that the automatic stay barred any actions to enforce the

20  section 187 judgment against O'Reilly.  O'Reilly argues that the section 187 judgment

21  was therefore entered in violation of the automatic stay, and is void.  O'Reilly does not

22  dispute that the bankruptcy court may grant retroactive stay relief under the test set forth

23  in *In re Fjeldsted,* 293 B.R. 12, 25 (9th Cir. BAP 2003).  However, he contends on appeal

24

25  _____

26  [1]      In the decision affirming entry of the amended judgment adding O'Reilly as a
    judgment debtor in favor of Danko, the court of appeal stated that under section 187 of

27  the California Code of Civil Procedure, "[j]udgments may be amended to add additional
    judgment debtors on the ground that a person or entity is the alter ego of the original

28  judgment debtor."  *Danko v. O'Reilly*, 232 Cal. App. 4th 732, 736 (2014) (citation
    omitted).

7

1    that the section 187 judgment should remain void because the bankruptcy court failed to

2    weigh the *Fjeldsted* factors required for retroactive relief from the automatic stay.

3          Appellees challenge O'Reilly's standing to enforce the automatic stay with respect

4    to the section 187 judgment.  O'Reilly asserts standing to appeal from both the

5    compromise order and the void judgment order on the ground that he is "directly and

6    adversely affected pecuniarily by an order of the bankruptcy court."  Appellant's Br. at 17

7    (citing *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999)).  O'Reilly cites authority for

8    the prudential standing doctrine, or the "person aggrieved test" for appellate standing.

9    *See In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir. 2011) (citing *Matter of*

10   *Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983)).  Under this doctrine, "[w]here the original

11   party to a lawsuit decides not to appeal (here, the trustee), the intervenor must have

12   independent standing to appeal."  *In re Pecan Groves of Arizona*, 951 F.2d 242, 245 (9th

13   Cir. 1991).  In *Pecan Groves*, the court held that in chapter 7 proceedings, "a creditor has

14   no independent standing to appeal an adverse decision regarding a violation of the

15   automatic stay," where the trustee does not appeal.  *Id.*  The court of appeals reasoned

16   that "[t]he trustee is charged with the administration of the estate for the debtor's and

17   creditor's benefit.  Allowing unsecured creditors to pursue claims the trustee abandons

18   could subvert the trustee's powers."  *Id.*

19         Under *Pecan Groves*, O'Reilly lacks standing to appeal the bankruptcy court's

20   compromise order for a violation of the automatic stay in a chapter 7 bankruptcy.  The

21   authorities cited by O'Reilly do not support his argument that he has standing to enforce

22   the automatic stay as a creditor of the estate.  In particular, *In re Int'l Forex of California,*

23   *Inc.,* 247 B.R. 284, 290 (Bankr. S.D. Cal. 2000) held that *Pecan Groves* was

24   distinguishable as a chapter 7 proceeding and did not apply in the Chapter 11 context.

25   Furthermore, like the claims asserted by the creditors against the individual corporate

26   officer in *Forex*, *id.* at 292, O'Reilly alleges a violation of the automatic stay to benefit

27   himself in the role of an "outside party," rather than as a creditor, as fully discussed in the

28   order denying O'Reilly's emergency motion to stay pending appeal of the compromise

United States District Court
Northern District of California

1   order.  Doc. no. 18.  Neither of the Ninth Circuit decisions cited by O'Reilly establishes

2   that he has standing to challenge the compromise order for a violation of the automatic

3   stay.  *See In re Globe Inv. & Loan Co., Inc.*, 867 F.2d 556, 559 (9th Cir. 1989) ("Although

4   it is questionable whether creditors of an estate may invoke the protections of section

5   362, we need not make that determination in this case."); *In re Computer*

6   *Communications, Inc.*, 824 F.2d 725, 727 (9th Cir. 1987) (holding that the automatic stay

7   prohibited party from unilaterally terminating a purchase agreement with the chapter 11

8   debtor, that the party should have applied to the court for relief from the automatic stay,

9   and that the party willfully violated the automatic stay).

10       With respect to the appeal from the void judgment order, however, O'Reilly was

11   the party that brought the motion for an order declaring Danko's section 187 judgment to

12   be void, and therefore has standing to appeal that order.  *In re Palmdale Hills Prop., LLC*,

13   654 F.3d 868, 874 (9th Cir. 2011) (citing *In re Sherman*, 491 F.3d 948, 957 n. 8 (9th Cir.

14   2007)).  Though Danko opposed O'Reilly's void judgment motion on the ground that

15   O'Reilly lacked standing, under *Pecan Groves*, to challenge a violation of the automatic

16   stay, the bankruptcy court did not expressly rule on the standing issue.  Because the

17   bankruptcy court denied O'Reilly's void judgment motion on the ground that it was

18   rendered moot by the compromise order, the court proceeds with review of the merits of

19   O'Reilly's appeal.

20   **II.      Review for Abuse of Discretion**

21           **A.      Approval of Compromise**

22       O'Reilly contends that Danko's section 187 judgment was obtained in violation of

23   the automatic stay and is void.  Appellant's Br. at 12-13.  As the bankruptcy court held,

24   O'Reilly's motion to declare the section 187 judgment void was rendered moot upon

25   approval of the compromise order, which provides for nunc pro tunc relief from the

26   automatic stay.  As the Ninth Circuit held in *In re Schwartz*, 954 F.2d 569, 573 (9th Cir.

27   1992), "if a creditor obtains retroactive relief from stay under section 362(d), there is no

28   violation of the automatic stay, and whether violations of the stay are void or voidable is

United States District Court
Northern District of California

1    not at issue." O'Reilly further contends that Danko is not entitled to retroactive stay relief,

2    which was effectuated by approval of the compromise agreement.  Appellant's Br. at 12-

3    13.

4         The bankruptcy court has great latitude in approving compromise agreements.  *In*

5    *re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise

6    agreement is to allow the trustee and the creditors to avoid the expenses and burdens

7    associated with litigating sharply contested and dubious claims."  *In re A & C Properties,*

8    784 F.2d 1377, 1380-81 (9th Cir. 1986).  In approving a proposed compromise in

9    bankruptcy proceedings, the court must consider:

10                  (a) The probability of success in the litigation; (b) the
                    difficulties, if any, to be encountered in the matter of
11                  collection; (c) the complexity of the litigation involved, and the
                    expense, inconvenience and delay necessarily attending it; (d)
12                  the paramount interest of the creditors and a proper deference
                    to their reasonable views in the premises.
13

14   *In re Woodson*, 839 F.2d at 620  (quoting *In re A & C Properties*, 784 F.2d at 1381).

15        O'Reilly does not dispute whether the bankruptcy court considered the correct

16   legal standard under *A & C Properties* for approving the compromise agreement among

17   the trustee and the estate's two largest creditors, Danko and California Bank & Trust

18   ("CB&T").  O'Reilly recognizes that "[t]he law favors compromise and not litigation for its

19   own sake, and as long as the bankruptcy court amply considered the various factors that

20   determined the reasonableness of the compromise, the court's decision must be

21   affirmed."   Appellant's Br. at 3 (quoting *In re A & C Prop.*, 784 F.2d at 1381).  O'Reilly

22   argues, however, that the compromise effectively granted retroactive relief from the

23   automatic stay as to Danko's amended judgment, and that the bankruptcy court

24   committed error by failing to balance the equities in granting Danko retroactive stay relief

25   under the factors set forth in *In re Fjeldsted*, 293 B.R. 12, 25 (9th Cir. BAP 2003).

26        Section 362(d) requires a court to grant relief from the automatic stay "for cause."

27   11 U.S.C. § 362(d)(1).  In determining whether there is cause to grant retroactive relief,

28   courts consider the following factors:

United States District Court
Northern District of California

1. Number of filings;

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

4. The debtor's overall good faith;

5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

7. The relative ease of restoring parties to the status quo ante;

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

*In re Fjeldsted*, 293 B.R. at 25.  A court should not mechanically apply these factors, but should use them as an aid in weighing the equities.  *In re Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997).  "In any given case, one factor may so outweigh the others as to be dispositive."  *In re Fjeldsted*, 293 B.R. at 25.

Appellees agree that the factors to be weighed under a balance of equities test for cause to grant *nunc pro tunc* relief from the automatic stay are set forth in *Fjeldsted*.

1    However, appellees argue that there is no controlling authority requiring the bankruptcy

2    court to apply the *Fjeldsted* factors to approve a compromise that provides for retroactive

3    stay relief as part of the compromise, and O'Reilly cites no such authority.  O'Reilly has

4    not, therefore, shown that the bankruptcy court abused its discretion by failing to identify

5    the correct legal rule in approving the compromise without expressly conducting a

6    balance of equities test to grant retroactive relief from the automatic stay.

7         **B.      Retroactive Relief from Stay**

8         Even if the bankruptcy court were required to conduct an independent balancing of

9    the equities test to determine cause for retroactive stay relief in addition to considering

10   the "fairness, reasonableness, and adequacy" of the compromise agreement, *In re A & C*

11   *Properties,* 784 F.2d at 1381, the findings of the bankruptcy court satisfy the *Fjeldsted*

12   test for granting retroactive stay relief.  The bankruptcy court's ruling may be affirmed on

13   any basis supported by the record.  *In re Yun*, 476 B.R. 243, 251 (9th Cir. BAP 2012); *In*

14   *re Heilman*, 430 B.R. 213, 216 (9th Cir. BAP 2010).

15        O'Reilly focuses on one of the two primary factors under *Fjeldsted*: "whether the

16   creditor was aware of the bankruptcy petition."  293 B.R. at 24.  It is undisputed that

17   Danko was aware of the bankruptcy, having filed the involuntary petition, and that he did

18   not seek relief from the automatic stay before seeking an amended judgment in state

19   court.  O'Reilly contends that "the equities cannot fall in Mr. Danko's favor" based on this

20   factor alone.  Reply at 3.  The parties do not directly address the other primary factor

21   under *Fjeldsted*, i.e., whether the debtor engaged in unreasonable or inequitable conduct,

22   or prejudice would result to the creditor, and do not take a position whether this factor

23   weighs either in favor of or against a stay.  *See Fjeldsted,* 293 B.R. at 24 (citing *In re Nat'l*

24   *Envtl. Waste Corp.*, 129 F.3d at 1055).  Regardless, Ninth Circuit authority has "never

25   held these two factors to be dispositive; instead, we have engaged in a case by case

26   analysis."  *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055.

27        O'Reilly contends that the trustee failed to meet its burden to establish a basis for

28   granting retroactive relief under *Fjeldsted*, but O'Reilly fails to address the evidence

United States District Court
Northern District of California

submitted in support of the motion for approval of the compromise agreement which

weigh in favor of retroactive stay relief, particularly whether stay relief would promote

judicial economy or other efficiencies and the lack of irreparable injury to the debtor by

granting retroactive relief.  The court noted the weight of this evidence in the order

denying O'Reilly's emergency motion for stay pending appeal:

- In particular, the trustee noted that by agreeing to retroactive stay relief for Danko's state court lawsuit, including enforcement of the amended judgment against O'Reilly, the compromise agreement would resolve Danko's appeal of the stay order to the Ninth Circuit, which would promote judicial economy and weigh in favor of granting retroactive stay relief. [Citation omitted.]

- In his motion to compromise before the bankruptcy court, the trustee explained that from his perspective, "'success' in this case is avoiding litigation and leaving the estate's two largest creditors to pursue Mr. O'Reilly, who would be the principal source of funds for the payment of their very substantial claims in any event."  [TE 11.]

- The trustee noted that Danko's appeal to the Ninth Circuit "was based upon the entry of the [order denying Danko's motion for an order that the automatic stay is inapplicable to the section 187 judgment], which stopped Mr. Danko from taking any collection action against Mr. O'Reilly, even though Mr. O'Reilly is not a debtor under the Bankruptcy Code."  [TE 11.] By rendering moot Danko's appeal of the stay order, the compromise "would eliminate any further involvement of the estate before the Ninth Circuit."  [TE 11.]  Thus, with respect to the irreparable injury factor under *Fjeldsted,* retroactive relief from the stay concerning Danko's amended judgment and enforcement action against O'Reilly would not cause irreparable injury to debtor.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   • Danko's attorney also addressed the efficiency gained by the compromise

2   and retroactive annulment of the stay:

3       This compromise benefits the estate and its creditors because
        otherwise the Trustee would have to expend substantial estate
4       assets to pursue various avoidance actions against O'Reilly and
        others while Danko and CB&T were relegated to the sidelines.
5       However, essentially all of the proceeds realized by the Trustee
        from these efforts would be distributed to Danko and CB&T.
6       Therefore the effect of this compromise is to extricate the
        bankruptcy estate from protracted and expensive avoidance
7       litigation which would ultimately be for the primary benefit of Danko
        and the Trustee, while protecting the rights of the other unsecured
8       and unsubordinated creditors.  [Declaration of James S. Monroe in
        Support of Danko's Opposition to O'Reilly's Motion for Stay
9       Pending Appeal] ¶ 6.

10

11  Doc. no. 18 at 15.

12          The trustee also points to evidence before the bankruptcy court that the

13  compromise agreement expressly provided for retroactive relief from the stay for any

14  proceedings in the Danko lawsuit, subject to Danko and CB&T's agreement to

15  "subordinate their substantial claims in this bankruptcy estate to all other valid, allowed

16  claims," with the exception of O'Reilly's claim.  TE 33-34.  The compromise further

17  provided that Danko and CB&T would be able to pursue their claims against O'Reilly

18  personally, rather than the trustee having to pursue fraudulent conveyance claims against

19  O'Reilly in costly litigation that would further delay the administration of the estate, where

20  the recovery would primarily benefit Danko and CB&T anyway.  TE 60.  In the context of

21  the compromise agreement among the trustee and the estate's two largest creditors, the

22  bankruptcy court's decision to grant retroactive stay relief promoted judicial economy and

23  did not cause irreparable injury to the debtor, and outweighed the well-established fact

24  that Danko was aware of the bankruptcy petition and failed to seek relief from the stay

25  when he obtained the section 187 judgment in state court.

26          The record also demonstrates that the "extent of prejudice" factor under *Fjeldsted*

27  weighs even further in favor of retroactive stay relief.  O'Reilly's position that the section

28  187 judgment was not entitled to relief from the automatic stay, and should be declared

14

United States District Court
Northern District of California

1    void, would have had a prejudicial effect on the estate's primary creditor, Danko, who

2    would have been required to start new litigation against O'Reilly personally, and would

3    have burdened the state courts which had already adjudicated a jury trial, section 187

4    motion and appeal on Danko's claims.  The record of proceedings shows that O'Reilly

5    opposed retroactive relief for the section 187 judgment on the ground that Danko "should

6    have to start at the beginning.  He shouldn't get the benefit of a stay-violative motion to

7    obtain the 187 judgment. . . .  void the judgment as it is and don't provide for retroactive

8    relief."  ER 40.  The bankruptcy court considered O'Reilly's plea for a "level playing field"

9    so that Danko would not be rewarded for violating the automatic stay, but recognized that

10   "if I adopt your rule[,] Mr. O'Reilly will get a windfall, won't he?"  ER 44.  That is, "he's

11   trying to invoke a stay that's not there to protect him."  ER 45.

12         O'Reilly argues that Danko is not entitled to retroactive stay relief because if the

13   equities did not support prospective relief from the stay when the bankruptcy court denied

14   Danko's earlier motion for an order that the stay was inapplicable to his section 187

15   judgment, then "the equities cannot now support retroactive relief" because "[n]othing

16   material has changed."  Reply at 5.  O'Reilly overlooks the many developments over the

17   course of the bankruptcy proceedings and the terms of the compromise agreement that

18   would promote judicial efficiency and benefit the estate by ending costly and uncertain

19   litigation.  The bankruptcy court expressly recognized that "if I approve the settlement as

20   presented I will annul - either annul the stay or retroactively grant relief.  So it will unring

21   the bell that said that judgment was void."  ER 36.

22         The record demonstrates that the bankruptcy court was aware of the competing

23   equities, particularly Danko's awareness of the bankruptcy at the time he sought entry of

24   the section 187 judgment, and noted that Danko's section 187 motion was fully litigated,

25   with opposition by O'Reilly, in state court.  ER 51-55.  The bankruptcy court also

26   recognized that the applicability of the automatic stay to the section 187 judgment was a

27   novel and complex legal issue arising in law firm bankruptcy proceedings, which was

28   subject to an uncertain outcome on Danko's appeal to the Ninth Circuit from the

bankruptcy court's order that the stay barred enforcement of the section 187 judgment. ER 69-70.  In particular, the bankruptcy court found no basis to find that Danko knew that his section 187 motion violated the automatic stay; it was later determined as a matter of bankruptcy law that "it's the imposition of the bankruptcy that creates this case law that allows fraudulent-transfer claims, or ducks, to be owned by the representative of the estate," and that Danko's alter ego claim was "in effect prosecuting a fraudulent-transfer action," which belonged to the estate.  ER 44; ER 50.  The bankruptcy court then determined that despite the dubious advantage earned by Danko, the *A&C Properties* factors weighed in favor of approving the compromise, including the retroactive stay relief, and noted "if Mr. O'Reilly is disadvantaged by this, that's unfortunate, but it's the way it plays out."  ER 668.  The findings of the bankruptcy court are sufficient to support retroactive stay relief under a balancing of the equities test as set forth in *Fjeldsted*.  *See In re Schwartz*, 954 F.2d at 572 ("section 362(d) gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay.").

### III.    New Arguments Raised on Appeal

O'Reilly contends that the bankruptcy court erred in approving the compromise agreement on additional grounds: (1) that the fraudulent conveyance causes of action, which are the exclusive basis of the state court section 187 judgment, were not Danko's at the time of the section 187 judgment and have still not been conferred upon or transferred to Danko; (2) that relief from stay does not confer substantive causes of action on Danko; (3) that transfer by the bankruptcy trustee is limited to what the trustee has, and that the trustee was not a party to, or the beneficial owner of, the section 187 judgment.  Appellant's Br. at 8-12.  O'Reilly raises these challenges to the bankruptcy court's orders for the first time on appeal.  The court notes that in opposition to the trustee's motion for compromise, O'Reilly argued that the compromise was nonsensical because if the estate waived the avoidance claims against O'Reilly, the claims are extinguished and cannot be pursued by Danko, an argument that is relegated to a

United States District Court
Northern District of California

1   footnote in his opening brief on appeal.  Appellant's Br. at 8 n.4.  O'Reilly does not pursue

2   that line of reasoning as grounds for appeal.

3        The arguments O'Reilly now makes on appeal about improperly transferring the

4   estate's causes of action and/or the section 187 judgment to Danko were not made to the

5   bankruptcy court, which likely would have summarily disposed of these groundless

6   arguments because they are not supported by relevant authority, are based on a

7   misreading of the compromise agreement, and/or conflate O'Reilly with the debtor.  The

8   trustee points out that the compromise order does not purport to transfer the alter ego

9   judgment from the trustee to Danko, who obtained the alter ego judgment in state court

10  without the trustee's involvement, but allows Danko to pursue his judgment against

11  O'Reilly personally.  Trustee Br. at 3, 15.  As the bankruptcy court stated, "If Mr. O'Reilly

12  wants to be protected by a stay, he can file bankruptcy.  But the automatic stay in the

13  O'Reilly & Collins case protects O'Reilly & Collins, its trustee, its estate.  It doesn't protect

14  third parties."  ER 68.

15      "Generally, an appellate court will not consider an issue unless it was raised and

16  considered by the trial court.  The purpose of this rule is to ensure that the parties present

17  to the fact finder all the evidence they believe is relevant to the issues presented."  *In re*

18  *Yun*, 476 B.R. 243, 251 (9th Cir. BAP 2012).  *See also In re E.R. Fegert, Inc.*, 887 F.2d

19  955, 957 (9th Cir. 1989) ("appellate courts will not consider arguments that are not

20  properly raised in the trial courts") (citation omitted).  Accordingly, these arguments about

21  improper transfer of causes of action and/or the section 187 judgment are waived on

22  appeal.

23                          **CONCLUSION**

24      For the reasons set forth above, the court AFFIRMS the order of the bankruptcy

25  court, entered July 18, 2014, granting the trustee's motion for order authorizing

26  compromise of controversy and the order, entered July 18, 2014, denying O'Reilly's

27

28

17

1    motion for an order declaring Danko's amended judgment to be void.  The clerk shall

2    enter judgment and close the file.

3         **IT IS SO ORDERED.**

4

5    Dated:  February 18, 2015

6                                                        _____

7                                                        PHYLLIS J. HAMILTON
                                                         United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28